The court notes that you're appointed under the Criminal Justice Act to represent Mr. Campbell, and the court appreciates your willingness to serve. Thank you, Your Honor. I would like to reserve three minutes for rebuttal if I could. I think your yellow light will go on then, and you'll just need to cease. Okay, very well. My name is Jeff Larson, I represent Carl Campbell in this action. Mr. Campbell was convicted of sex trafficking by force or coercion, sex trafficking of a child, interstate transportation for prostitution, and obstructing sex trafficking enforcement. For those convictions, he received three life sentences and two 20-year sentences, all to run concurrently. He's here on appeal requesting relief from a judgment resulted from erroneous evidentiary rulings, and rulings which denied Mr. Campbell his right to confront and cross-examine adverse witnesses. I'll try to begin with a brief factual summary, and then confine my argument to selected issues while relying on the brief for the remaining issues that I did not get time to address. Carl Campbell and Mindy Elish were in a girlfriend-boyfriend relationship from the summer of 2010 until roughly December 21st of 2011, when Elish wrote Campbell a letter when he was in custody, telling him that she has decided to give up the baby she was carrying from Carl for adoption. During that year and a half, there was physical abuse of Ms. Elish by Mr. Campbell. Both were in and out of jail. Both had substance abuse problems. There was prostitution by Elish whether or not Campbell was around. On July 12th of 2011, Elish was stopped in suburban Chicago for a headlight violation. At that point, she had $1,200 in cash on her person, felony warrants for her arrest from South Dakota. And at that point, claimed Campbell was forcing her to prostitute herself, and then continued that prostitution activity for weeks after Campbell was arrested. I'll try to first address the evidentiary rulings of the trial court, and then discuss the confrontation clause issue, but at times those two are intertwined because of the very nature. The first issue I'd like to talk about are the photographs and the testimony about the assaults on Elish, where evidence was taken that predated any government hooking it up to any relationship at all to the prostitution activity. To put it in perspective, the government starts by giving us notice under 404B, that the assaults on Elish were other acts evidence. At the hearing, the trial court ruled that they were actually res gesti, which seems to be almost the opposite of other acts. That they were so inextricably intertwined that any assault on Elish by Campbell came in. The unfortunate effect of that was it absolved the government of proving the key causal issue in this case, which is whether the domestic abuse was causally related to prostitution. Because it was adventistary that this year and a half relationship, that the violence preceded the alleged prostitution activity, and then went through it. And was often triggered by jealousy, and we tried to present evidence on that and were prohibited at some point. Photographs were admitted, without any link to prostitution, of a November 26th, 2010 assault. A December 28th, 2010 assault, along with hearsay testimony that it was the result of domestic assault. And a August 8th of 2011 domestic assault, where the hearsay of a witness that was never called by the government was allowed in to explain that. Now, the government argues that they should be allowed to put in evidence of assaults without any link at all to prostitution to lead their case. Because they claim that Rule 611 basically allows trial court some latitude, which I agree, in allowing the ordering of evidence. But Rule 611 says that the trial court should exercise reasonable control over the mode and order. And then the government cites the Puckett case, where they actually, the trial court allowed the government to call a law enforcement officer on two different parts of the trial. So that things made sense chronologically in the trial, which is exactly the opposite of what the government did here. They led with the theatrics of the pictures of the brutal assaults without linking anything to the prostitution. And by the way, none of the results were reported to police as having anything to do with prostitution also. So is it your position there was never a link up, or the link up was late in the game? Both. There was never a link up to some. Ms. Elish did finally testify at trial, inconsistent with reports to police, that some of them were directly related. One was supposedly related to money that was not turned over, I believe. So what was the sort of numbers there? How many did she confirm or testify to as being related? And how many were sort of left hanging, roughly, even? I didn't keep a scorecard, Your Honor. I can't honestly tell you. I think that there were at least a couple that were left hanging, but I can't tell you the dates of the particular ones. I know that she did tie in some. I know that there was some argument that, for example, I think the early 2010 ones, I think she alleged later on that the prostitution actually started after a series of them, so I don't think those could be related. Although the government did argue that that was part of a grooming process for something that had not yet happened. If you contest the res gestae ruling there to the evidence that was allowed in relative to NK, one of the juvenile victims in this particular case, Mr. Campbell met her as she was making a prostitution call in a hotel unrelated to anything Mr. Campbell was involved in. NK was allowed to say that Campbell explained the ropes of prostitution. But we were not allowed, that was not considered to be res gestae that she was there on a prostitution call. Nor were we allowed to cross examine her about that fact, even though she claimed that the process was explained to her by Mr. Campbell. The for sale case from the circuit says that res gestae means that it has to be so blended or connected. And compare how blended and connected that is, that she's there on a prostitution call when he meets her, versus the Mindy Alish evidence that was allowed in that her mother was abused 20 or 30 years before, that she was in a prior abusive relationship with a lover. That was never tied in to have any connection whatsoever of relevance, other than the government claimed that this shows that she was part of this abuse cycle. Yet one of the arguments was, is that's why she didn't report it to the police, yet she testified when her mother didn't report it to police, the assaults escalated. So it actually is counterintuitive to what the government says the reason. How would your client be prejudiced, even if you're right that it's not res gestae? How's your client prejudiced by the fact that the victim's mother was abused by some guy 20 years ago? The theory of the government's case appeared to me to be, start off with every possible sympathetic factor you can get of an unsympathetic victim. Before you subject her to cross-examination. And the fact of the matter is, is she continued prostitution after this was done. You can see in the government's exhibit 30 that she's openly talking about prostitution and letters when he is in the county jail. Yet all that came in, right? You were able- The letters came in, yes. You were able to argue to the jury that she continued in it and so forth. Right. After a day and a half of sympathetic things was put on before we ever had a chance to do those things. And that's my argument, is that it's the combination of the errors here. It's not one particular error that makes it prejudicial. But the combination of not letting in the bad stuff on the government's witnesses, letting in all the bad stuff relative to the defendant, and doing it in an order where they were not even required to show any relevance of the evidence that they led with. And we're supposedly going to tie it up later in the case. The confrontation issues with LO had to do with cross-examination of the fact that it was Mr. Clinton, not Carl, that told me about this. And we had that kept out under a 412 ruling. Yet 412 has an exception when it has to do with the defendant's constitutional right. And certainly confronting the witnesses against by cross-examination is a part of that. Similar to the 404B evidence on JR is worthy of comment. JR was a young person, substantially younger than Mindy Elish. The government went to great lengths to prove that she had special needs herself and was different than the other victims in this particular case. And the assault that was allowed was a scratching of her leg with a key. Yet the entire JR evidence was allowed in as 404B. And the point is, is that there should be, the Gantt case cited by the government, that there should be repeated, that there were repeated occurrences of similar acts. The type and degree of the abuse was totally different. The fact that one was in a lover relationship and one was in a totally different relationship. The youth versus the age of the other person. There were so many things that separated JR's situation from that of Ms. Elish. Yet all of those things were ignored and JR's testimony was allowed to come in. The Turner case says that 404B evidence should not be used to show propensity. And the factors it talks about are relevance to a material issue. And if you read JR's testimony in whole, I think it is legitimate to say, really what does this have to do with the other people? Similar and close in time, I've already pointed out a lot of the factual distinctions between the two. And the fact that the prejudicial value doesn't substantially outweigh the probative effect. There was an obvious, and you can tell by the ordering of the direct examination, there is an obvious attempt to portray JR as somebody of somewhat limited intelligence. That was taken advantage of, that the abuse was supposed to be cutting or scratching with a key. Yet when you say, what does that really have to do? She's an adult, what does that have to do with what Mr. Campbell was allegedly doing with minors? And more importantly, what does it have to do with something that he's allegedly involved with a lover relationship as his own girlfriend? It was the JR evidence was propensity evidence, clear and simple. And for the reasons I've stated, I think the combination of all of these errors denied Mr. Campbell a right to a fair trial, and certainly denied him a right to confront and cross-examine the adverse witnesses. Thank you. Very well, thank you Mr. Larson. Mr. Colliner, we'll hear from you. Thank you, Your Honor. I'm Kevin Colliner with the District of South Dakota, representing the government. Your Honors, this is a case in which the evidence at trial was overwhelming. And although there are many issues that are briefed in this appeal, they all, in my view, tend to fall into the category of, at very worst, harmless. There were, I believe, 18 different witnesses who testified. The convictions could stand on the basis of three witnesses alone, and that's the three victims who each testified in this case. Mr. Campbell also testified in this case. In his testimony, he fully admitted that his email was associated with back page prostitution ads, that he posted these ads. That his primary victim, Mindy Elish, went on quote unquote dates. He admitted that he beat her up a number of times. He admitted that he took her out of town. He admitted that he knew both of the juvenile victims. He admitted he had sex with one of the juvenile victims when he was in his mid-30s and she was 16. With the other one, NK, he admitted that he drove her to a truck stop with another guy, another indicted and now convicted federal defendant, and that she climbed out of the truck stop. And was gone for a while, and then came back and handed over some money. Those are the defendant's own admissions in this case. The factual recitation given by defense counsel here was the defense before the jury. And the jury rejected that on each count beyond a reasonable doubt. Questions are raised about whether these assaults were linked up to prostitution. 18 U.S.C. 1591 does not require that for each prostitution act there's an accompanying assault. The evidence in this case is that the first prostitution act engaged in by the primary victim, Miss Elish, occurred about a week after the first documented beating. That was one in which she was beaten at an after hours bar party. And her testimony was that when she walked down the hallway, the first time for that prostitution act, she still had black eyes that she had covered up with concealer. Were all of the alleged instances of assault with the photos, were they linked up to the prostitution eventually, or were there some that were not? Yes, her testimony throughout was that she didn't feel like she had a choice in this. And the reason she didn't have a choice is because this is a man that was beating her regularly. So is your position that all of these were linked up by her general testimony about the assaultive behavior? Yes, the standard is whether someone in her position, given her station in life, given the surrounding circumstances, would believe that she would incur some kind of serious harm had she not engaged in these sex acts. I mean, that's the coercion standard in 1591. In this climate that she was in, where she was being beaten for all sorts of things. Were some of these attributable to jealousy between two people? Maybe they were, but she knew the consequences of saying no to Carl Campbell, which was she was going to get beat. She was going to get hot chili thrown in her face. She was going to get sliced across the nose with a knife. She was going to get her eye socket broken, etc., etc. There were specific assaults that dealt with the prostitution business exactly. Things like a time when he beat her in the shower while holding money that he found that she had hidden in her coat. The time that she missed a phone call from a prostitution customer while at a drive-thru at a Wendy's drive-thru restaurant. And he threw a thing of hot chili in her face. So there were assaults that were no question about it. There was another one in a hotel where she went to grab some money and run out the door. And it was prostitution money and he beat her for that. No question that the violence and the prostitution were part and parcel linked up in this case. Simply out of, in the interest of avoiding a couple of appellate issues and  What was the reasoning for the order of proof with respect to these photographs and the motel receipts? Why not wait until the connection is shown or there's some evidence of the connection and then offer them? The simple reason was the order that we had witnesses available. We had a number of, we had three officers that put in the photographs. And so they were there on that first day of trial and we put in the photographs through those officers. They laid the foundation for when they took those photographs. And then we then put the victim on who described not only the photographs, but also the assaults. That was, I think in the record there's a question by my trial co-counsel raised by the court about that issue. And I think his response, probably too flippant, was because I just feel like putting him in, in this order. And that was a trial decision based upon how we ordered our witnesses. Is that in the record? Is that statement in the record? I think so. There is a question by the court about when this objection was raised with respect to the ordering of the evidence. And by the way, the court did sustain part of that objection and had the case agent come on later in the case. In terms of the rule 404B notice and the other acts notice, I wanted to respond to a comment by defense counsel that we acknowledge that these assaults against Mindy Elish were somehow not related to the offense because we noticed them up in our 404B notice. The 404B notice notices them up as race jest I, but in the case that the court finds that they're 404B, out of an abundance of caution, we notice them up here pre-trial in our 404B notice. That's my practice. If I think there's a close call, if I think there's not a close call, but there are other crimes that I believe are rest jay, rest jay, rest jayst I, I put them in my 404B notice. So that's what happened here. There was no concession on the part of the government in that notice that these were not a part and parcel of the indicted crimes. With respect to these rule 412 issues regarding the minor victims here, I believe that those arguments are foreclosed by this court's directly on point decision in USV Elbert. That was precisely the same question, precisely the same statute, precisely the same issue that was decided on all four corners by this court. Not only addressing the relevance questions, but also the constitutional issues. So I believe it would have been error for the district court to have decided otherwise based upon that decision. As I say, there are a number of issues briefed up here. I have seven minutes left on my clock. I'm happy to answer any more questions. Our view in this case is, again, that the evidence was overwhelming, proved and corroborated in numerous ways, supported the convictions and the sentences. All right, well, the issues have been fully briefed and there's no requirement that you use every second on the clock. So if you're finished, we'll consider it submitted. Do you have any rebuttal, Mr. Larson? Yes, sir. When counsel at trial was asked a similar question to what Judge Shepard asked relative to why the ordering was, the exact answer was, just want to, Your Honor, in the exchange that's cited on page 12 of our appellant's brief. The fact of the matter was, is I don't recall, and I defer to Mr. Conner if he thinks there's a citation in there, but I don't recall that there's a citation in there. I don't recall that ever being said, anything in trial, about we have a problem with the ordering of the witnesses. It was kept saying, we want to do it this way, this is our strategy, and we don't want to be told how to present our case. I don't recall anything about the ordering of the witnesses, but I'll defer to the record on that. The argument is that these were relevant, the early assaults in particular were relevant, because of all surrounding circumstances. Yet, if you compare that to the backdrop of why then were we not allowed to cross-examine Detective Giuliani about the statements to him immediately upon her being stopped, that the assaults were because of jealousy of her interactions with an employee at the motel at which they were staying. It would seem odd that the prior assaults, the victimization of her mother, the victimization of her at the other hand of something, are part of the surrounding circumstances. Yet the fact that she states on the same day that this is supposedly happening, that she was assaulted because of jealousy of somebody else, that that was not part of the surrounding circumstances. Did the judge keep it out as hearsay? The judge kept it out as hearsay. Did you cross-examine her and confront her with her prior statement? Did you say, for example, Miss Witness, did you tell Officer So-and-so that you- I honestly don't recall if I did or not. That would have been open to you. Right, but I think it was an inconsistent statement relative to what she had said. So I think it should have been allowed in. Well, my point is, wouldn't it have been allowed in through the witness herself if you'd asked her about it? And then if she denied it, you could get into whether you had further recourse. I see what you're saying. If you didn't ask her, then why was it air to keep out the officer's statement as hearsay, particularly when you had the witness available? Because the exception would be if it's a prior inconsistent statement. I agree. I agree. In a more perfect world, I would have done it. It was brought out on cross-examination. Okay. Maybe you got it in then, in which case there's really no errors there. I defer to the court's reading of the record on that. We can all check that, of course. Yeah. That's just what I had noted. And if you do, that's fine. I would like to briefly touch on the harmless, I see my time has elapsed. Well, I think you've briefed that point, so we'll be sure to focus on that in the brief. And thank you again for your argument. I appreciate it, thank you. The case is submitted, and we will file an opinion in due course. The court will be in